[DO NOT PUBLISH]

# In the
# United States Court of Appeals
# For the Eleventh Circuit

_____

No. 22-13916

_____

JARRETT CUDD,
on behalf of himself and all others similarly situated,

                                  Plaintiff-Appellant,

*versus*

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,

                                  Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Georgia
D.C. Docket No. 4:21-cv-00217-CDL

_____

Before WILLIAM PRYOR, Chief Judge, ROSENBAUM and ABUDU, Circuit Judges.

PER CURIAM:

Appellant Jarrett Cudd ("Cudd") filed this class action against appellee, State Farm Mutual Automobile Insurance Company ("State Farm"), alleging breach of contract. Cudd owned a vehicle insured by State Farm. When Cudd submitted a claim for damage to the insured vehicle, State Farm declared that vehicle a total loss and elected to pay the actual cash value of the insured vehicle pursuant to an automobile insurance policy (the "Policy") between the parties. Cudd disagreed with State Farm's initial valuation of his vehicle. The Policy requires the parties to participate in an appraisal if a dispute over the insured vehicle's actual cash value arises; however, that requirement is not a condition precedent to Cudd's lawsuit.

Accordingly, after reviewing the record and the parties' briefs, and with the benefit of oral argument, we vacate the district court's order granting State Farm's motion to dismiss and remand this case for further proceedings. However, we affirm the district court's dismissal of the unjust-enrichment claim under its alternative reasoning for failure to state a claim as a matter of Georgia law.

I.   **FACTUAL BACKGROUND & PROCEDURAL HISTORY**

State Farm issued Cudd a Policy that provided insurance

coverage for his 2014 Nissan Sentra SV. Under the terms of the Policy, when the policyholder files a claim for loss caused to an insured vehicle, State Farm can exercise one of two options: (1) it can pay the cost to repair the vehicle minus any deductible; or (2) pay the vehicle's actual cash value minus any applicable deductible. If State Farm chooses to pay the actual cash value of a total loss vehicle, the Policy provides that "[t]he owner of the covered vehicle and [State Farm] must agree upon the actual cash value of the covered vehicle. If there is a disagreement as to the actual cash value of the covered vehicle, then the disagreement will be resolved by appraisal upon written request" by either party. The Policy does not define the term "actual cash value." Instead, the Policy details an appraisal procedure that the parties must utilize if they disagree about the actual cash value of an insured total loss vehicle. Additionally, the Policy states that "[l]egal action may not be brought against [State Farm] until there has been full compliance with all provisions of th[e] [P]olicy."

State Farm deemed Cudd's insured vehicle a total loss and elected to pay the actual cash value of the vehicle pursuant to the Policy. To calculate the actual cash value of insured vehicles, State Farm relies on a valuation report obtained from Audatex—a third-party vehicle valuation company. Audatex generates valuation reports using the Autosource Market-Driven Valuation software program. In a valuation report, Audatex provides the price of four comparable vehicles listed for sale online in the relevant market. Audatex then deducts a percentage representing the cost of "typical negotiation" from the listed sale price for each comparable vehicle.

State Farm used Audatex's valuation of Cudd's total loss vehicle and applied a typical negotiation deduction of approximately 8% or 9% to Cudd's total loss claim. State Farm valued Cudd's vehicle at $8,531 and paid him that amount as the actual cash value of his totaled vehicle.

Following State Farm's valuation of his total loss vehicle claim, Cudd initiated a putative class action suit in federal district court, alleging that State Farm's systematic application of typical negotiation deductions deliberately undervalues the actual cash value of its insureds' total loss vehicles. Cudd further alleged that State Farm's systematic application of typical negotiation deductions is a breach of the Policy and violates Georgia law because by applying the typical negotiation deduction, it reduced the actual cash value of his totaled vehicle by $670.25.

A month after Cudd filed the complaint, State Farm sent him a written request for appraisal pursuant to the Policy. However, Cudd refused to participate in the appraisal process, asserting that the Policy's appraisal provision is unenforceable because he sought to challenge State Farm's systematic application of typical negotiation deductions to total loss vehicle claims.

Shortly after Cudd's refusal to participate in an appraisal, State Farm filed a motion to dismiss the action under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), arguing that Cudd has failed to comply with the Policy's appraisal provision. The district court granted State Farm's motion to dismiss. The district court reasoned that Cudd's challenge to State Farm's application of the

typical negotiation deduction to his total loss vehicle claim represented an actual-cash-value dispute. The district court determined that the Policy's appraisal provision was a condition precedent to suing State Farm regarding the actual cash value of his totaled vehicle. Accordingly, the district court entered judgment in favor of State Farm, finding that Cudd's suit was premature because he failed to provide State Farm with a meaningful opportunity to invoke the Policy's appraisal provision before initiating suit. The district court also dismissed Cudd's unjust-enrichment claim on alternative grounds, finding that Cudd could not state such a claim when a contract exists covering the same subject matter under Georgia law. Cudd timely appealed.

## II.    STANDARD OF REVIEW

We review *de novo* a district court's grant of a motion to dismiss for failure to state a claim. *Berman v. Blount Parrish & Co.*, 525 F.3d 1057, 1058 (11th Cir. 2008). At the motion to dismiss stage, we accept the complaint's factual allegations as true and construe them in the light most favorable to the nonmovant. *Kizzire v. Baptist Health Sys., Inc.*, 441 F.3d 1306, 1308 (11th Cir. 2006) (citation omitted). We also review *de novo* the interpretation of an insurance policy. *Hallums v. Infinity Ins. Co.*, 945 F.3d 1144, 1148 (11th Cir. 2019).

## III.    DISCUSSION

Georgia law controls the interpretation of the Policy. Under Georgia law, the standard rules of contract construction govern the interpretation of an insurance policy, "and the cardinal rule of

construction is to ascertain the intent of the parties." *Auto-Owners Ins. Co. v. Smith*, 798 S.E.2d 93, 96 (Ga. Ct. App. 2017) (internal quotation marks and citation omitted). When the language of an insurance policy is plain and unambiguous, Georgia "court[s] simply enforce[] the contract according to the terms, and look[] to the contract alone for the meaning." *Am. Empire Surplus Lines Ins. Co. v. Hathaway Dev. Co.*, 707 S.E.2d 369, 371 (Ga. 2011) (citation omitted). Georgia law requires any ambiguities in an insurance policy to be "strictly construed against the insurer as drafter of the document" and liberally in favor of the insured. *Am. Strategic Ins. Corp. v. Helm*, 759 S.E.2d 563, 567 (Ga. Ct. App. 2014) (citation omitted). A provision in an insurance policy is ambiguous if it is susceptible to more than one reasonable interpretation. *Id.* at 565. Nevertheless, Georgia courts apply the ordinary rules of contract construction to resolve any ambiguities in an insurance contract. *Id.*; *Duckworth v. Allianz Life Ins. Co. of N. Am.*, 706 F.3d 1338, 1342 (11th Cir. 2013) (quoting *Alea London Ltd. v. Am. Home Servs., Inc.*, 638 F.3d 768, 773 (11th Cir. 2011)).

Generally, Georgia law disfavors conditions precedent in an insurance contract but "where the language of the contract clearly creates such a condition, that condition must be enforced." *Moore v. Humble*, 890 S.E.2d 28, 31 (Ga. Ct. App. 2023) (internal quotation marks omitted) (quoting *Allen v. Sea Gardens Seafood*, 723 S.E.2d 669, 671 (Ga. 2012)). To determine if a condition precedent exists in a contract, Georgia courts "look to the language of the agreement itself." *Hall v. Ross*, 616 S.E.2d 145, 147 (Ga. Ct. App. 2005). If the contract's language "is plain and unambiguous" and the

parties' intent is obvious, courts will enforce the contract as written. *Id.* (quoting *Guthrie v. Guthrie*, 594 S.E.2d 356, 358 (Ga. 2004)).

This appeal presents two main issues for us to resolve: (1) whether the Policy's appraisal provision is enforceable in the present circumstance; and (2) whether the Policy's appraisal provision is a condition precedent to suit.

First, we conclude that the Policy's appraisal provision is valid and enforceable. The appraisal provision is clear and unambiguous: it provides that State Farm and the policyholder must agree on the actual cash value of a total loss vehicle, and if the parties dispute the actual cash value, the dispute must be resolved by the Policy's appraisal process upon written request by either party. Under the Policy's appraisal provision, the parties agreed to resolve any dispute over the insured vehicle's actual cash value through appraisal. That is the intent of the parties as expressed in the appraisal provision. Nothing else in the language of the Policy renders the appraisal provision invalid or unenforceable. *See Reed v. Auto-Owners Ins. Co.*, 667 S.E.2d 90, 92 (Ga. 2008) ("Where the contractual language unambiguously governs the factual scenario before the court, the court's job is simply to apply the terms of the contract as written, regardless of whether doing so benefits the carrier or the insured." (citations omitted)).

Here, Cudd's assertion that State Farm paid him $670.25 less than his vehicle was worth signifies a disagreement over the totaled vehicle's actual cash value. Therefore, the appraisal provision applies, at least in part, to the dispute before us. Nevertheless, Cudd

argues that even if the appraisal provision applies to his claims, it is unenforceable because Georgia law prohibits arbitration provisions in insurance contracts and pre-dispute waivers of the right to a jury trial. However, the Supreme Court of Georgia has explained that the bar on arbitration clauses does not extend to a provision within an insurance contract that establishes a process for settling disputes over the value of an insured's covered loss. *See McGowan v. Progressive Preferred Ins. Co.*, 637 S.E.2d 27, 29 (Ga. 2006) (explaining that "appraisal clauses in insurance contracts are enforceable"). Moreover, the appraisal provision does not waive the right to a jury trial. Indeed, the Policy states that "[a]ppraisers shall have no authority to . . . decide any questions of law." Therefore, the appraisal provision applies and is enforceable in Cudd's case.

Second, we conclude that the Policy's appraisal provision is not a condition precedent to suit. Nothing in the Policy's appraisal provision language requires the policyholder to notify State Farm if he or she disagrees with its initial valuation of a totaled vehicle's actual cash value before filing suit. In fact, the plain language of the Policy demonstrates that the appraisal provision is triggered only if a party requests appraisal in writing. The Policy is silent on when and how a policyholder is to notify State Farm of an actual-cash-value dispute. Therefore, Cudd did not violate the Policy simply because he did not notify State Farm of an actual-cash-value dispute before commencing suit.

The Policy's appraisal provision is clear as day: the actual-cash-value dispute of the insured vehicle must be resolved through

the Policy's appraisal process once requested in writing by either party. Compliance with the appraisal provision is mandatory.

The parties do not dispute that State Farm requested appraisal in writing after Cudd filed suit. State Farm's written request for appraisal remains unsatisfied. Therefore, although Cudd did not violate the Policy by filing suit prior to receiving State Farm's written request for an appraisal, and the district court erred by dismissing the action because appraisal is not a condition precedent to suit, the parties must still participate in the Policy's appraisal process now that State Farm has invoked that provision.

Finally, we affirm the district court's dismissal of Cudd's unjust-enrichment claim on the district court's alternative reasoning. Unjust enrichment claims like Cudd's fail as a matter of Georgia law where, as here, "any benefit conferred on the defendant[] was triggered by a provision in the contract, the validity of which neither [plaintiff] nor the defendant[] challenge[s]." *Tidikis v. Network for Med. Commc'ns & Rsch. LLC*, 619 S.E.2d 481, 485 (Ga. Ct. App. 2005).

## IV.   CONCLUSION

Based on the foregoing, we **AFFIRM** the district court's dismissal of Cudd's unjust-enrichment claim, **VACATE** the rest of the district court's judgment in favor of State Farm, and **REMAND** this case for further proceedings consistent with this opinion.

**AFFIRMED IN PART, VACATED IN PART,** and **REMANDED.**